## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 19 2019, 5:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of D.B., L.B., H.B. & S.B. (Minor Children)

and

D.J.B. (Father) and M.M.B. (Mother),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

September 19, 2019

Court of Appeals Case No. 19A-JT-542

Appeal from the Starke Circuit Court

The Honorable Kim Hall, Judge

Trial Court Cause Nos.
75C01-1808-JT-13
75C01-1808-JT-14
75C01-1808-JT-15
75C01-1808-JT-16

*Appellee-Petitioner.*

**Bradford, Judge.**

# Case Summary

[1]     D.J.B. ("Father") and M.M.B. ("Mother") (collectively, "Parents") are the parents of D.B., L.B., H.B., and S.B. (collectively, "the Children"). The Department of Child Services ("DCS") became involved with the family after receiving reports of poor home conditions and the Children having poor hygiene. DCS initially left the Children in Parents' care while DCS worked with Parents to improve the condition of the family's home. The Children were determined to be children in need of services ("CHINS") and Parents were ordered to complete certain services. While the CHINS proceedings were pending, the Children were removed from Parents' care and placed in foster care after the conditions in the family's home continued to deteriorate and DCS became aware of substance abuse by Parents. Parents failed to successfully complete the ordered services leading DCS to file petitions to terminate their parental rights to the Children. Following an evidentiary hearing, the juvenile

court granted DCS's petitions to terminate Parents' parental rights to the Children. On appeal, Parents contend that DCS failed to present sufficient evidence to support the termination of their parental rights. We affirm.

## Facts and Procedural History

D.B. was born on February 2, 2004; L.B. was born on August 10, 2005; H.B. was born on February 9, 2008; and S.B. was born on July 2, 2009. DCS filed petitions alleging the Children to be CHINS in May of 2016, after observing "the Children to have poor hygiene" and poor home conditions. Ex. Vol. III, p. 7. As for the home conditions, on May 5, 2016, "DCS observed the family home to be extremely cluttered and messy with piles of clothing throughout the home. The home had a strong smell of animals." Ex. Vol. III, p. 7. Mother admitted that the home was dirty and that she and Father needed "assistance to improve the conditions of the home." Ex. Vol. II, p. 7. On June 14, 2016, Parents admitted that the Children were CHINS. Following a dispositional hearing, the juvenile court ordered Parents to: (1) maintain safe, sanitary, suitable, and DCS approved housing; (2) obtain and/or maintain a legal source of income sufficient to support all family members; (3) complete a parenting assessment and follow all recommendations; (4) complete a substance use assessment and follow all recommendations; (5) submit to random drug screens; (6) complete a clinical assessment and follow all recommendations; and (7) cooperate with DCS, the court-appointed special advocate ("CASA"),

and all service providers. The juvenile court further ordered that the Children were to remain placed in the family home with Parents.

[3] The Children were removed from Parents' home on July 29, 2016, after the conditions of the home deteriorated and DCS became aware of substance abuse by Parents. Following a February 28, 2017 periodic case review hearing, the juvenile court found that Parents "have partially complied" with the Children's case plans. Ex. Vol. III, p. 19. Specifically, the juvenile court found that while Parents had visited the Children and cooperated with DCS,

> The mother is making progress in her substance abuse treatment but the progress is slow due to missed appointments, missed group sessions, a positive screen for methadone, and using prescription medication over the therapeutic level. The father is not consistent with substance abuse treatment and has failed approximately 7 drug screens for either marijuana, Xanax, cocaine or morphine. The mother and father have not participated in home based case work. The mother and father were arrested during this reporting period for an incident involving domestic violence between mother and father. A No Contact Order was entered as a result of the incident.

Ex. Vol. III, p. 19. The juvenile court determined that Parents "have not enhanced their ability to fulfill their parental obligations." Ex. Vol. III, p. 19. On June 27, 2017, the juvenile court found that (1) Parents were inconsistent in their participation in individual therapy and substance abuse treatment and (2) both had failed to maintain their sobriety and had tested positive for methamphetamine. Parents continued to struggle with substance abuse and

their participation in services remained inconsistent throughout the CHINS proceedings.

[4] On August 23, 2018, DCS filed petitions seeking the termination of Parents' parental rights to the Children. The juvenile court conducted an evidentiary hearing on DCS's petitions on January 7 and 9, 2019. During the evidentiary hearing, DCS presented evidence indicating that Parents had been unable to secure stable, acceptable housing and had continued to test positive for drugs. DCS also presented evidence indicating that the Children required stability and were doing well in their current placement. On February 8, 2019, the juvenile court issued orders terminating Parents' parental rights to the Children.

# Discussion and Decision

[5] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are

irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent–child relationship. *Id.*

[6] Parents contend that the evidence is insufficient to sustain the termination of their parental rights to the Children. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[7] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent–child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[8] Parents claim that DCS failed to present sufficient evidence to prove by clear and convincing evidence:

> (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[ren].
> (iii) The child[ren have], on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child[ren.]

Ind. Code § 31-35-2-4(b)(2).

# I. Indiana Code Section 31-35-2-4(b)(2)(B)

[9] It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find that one of the conditions listed therein has been met. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines that one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882.

[10] DCS does not allege that the Children have been adjudicated CHINS on two separate occasions. As such, DCS had to prove either that (1) the conditions resulting in removal from or continued placement outside Parents' home will not be remedied or (2) the continuation of the parent-child relationship poses a threat to the Children.

[11] The Children were removed from Parents' home for two reasons: home conditions and substance abuse by Mother and Father. In concluding that the conditions leading to the Children's removal from Parents' home were not remedied, the juvenile court found that while Mother and Father presented evidence that they believed demonstrated that they had addressed both issues, the court did not believe that Parents had successfully addressed their substance abuse issues or that Parents would maintain their allegedly improved home conditions.

[12] At the time of removal, the conditions of Parents' home were atrocious and barely livable. Since removal, Mother has resided in eight different residences and Father has resided in at least four different residences. Parents have been evicted from at least two of these residences for failure to pay rent. At the time of the evidentiary hearing, Parents presented pictures to show that their current home conditions were appropriate. However, neither DCS Family Case Manager ("FCM") Kara Crippen nor the Children's CASA have been able to verify the conditions of the home. The juvenile court noted that while the pictures presented by Mother appear to show appropriate living conditions, the court was not convinced, given Parents' history of instability, that Parents would be able to maintain the conditions of the home.

[13] The evidence also establishes that Parents have a long history of substance abuse. At the time of removal, Mother was abusing her prescription medication and Father was taking certain unprescribed medications and cocaine. Mother and Father completed random drug screens from May of 2016 through July of

2018. During this period, Father tested positive, without having valid prescriptions, eight times for amphetamine, eight times for methadone, four times for morphine, and three times for benzodiazepine. Father also tested positive four times for THC, four times for oxycodone, twice for methamphetamine, and once for fentanyl. Each of Father's positive tests for oxycodone revealed fatal levels of the drug in Father's system, leading the toxicology lab to request a welfare check. Mother tested positive, without having valid prescriptions, two times for hydrocodone, two times for benzodiazepine, two times for suboxone, and one time for methadone. Mother also tested positive five times for oxycodone and once for methamphetamine. In addition, Mother failed to consistently take her prescription medication and Parents each refused at least one drug screen despite claiming to be sober.

[14] Parents' substance abuse assessments revealed a high probability that each was suffering from a substance abuse disorder. The assessments indicated that educational courses would not adequately address Parents' issues and that Parents would require addictions therapy and exposure to appropriate community support groups. Mother's assessment also noted that Mother suffered from considerable emotional pain and found that Mother would need a more comprehensive mental status evaluation. While Mother made some progress in treatment, Father did not. During group sessions, Father was combative, blamed DCS for everything, and did not take accountability for his actions. Father also provided various excuses for his failure to consistently attend treatment.

[15] The juvenile court found that Parents suffer from both a physical and psychological addition. Mother also suffers from mental illness, including bipolar disorder, depression, and anxiety. She also suffers from social anxiety, low self-esteem, and struggles without Father. Father, however, did not come across as supportive of Mother. Rather, he would belittle and attempt to control her. Mother does not have additional family support and, at the time of the evidentiary hearing, was not attending therapy, NA/AA meetings, or support groups. She was not seeing a doctor or taking any medication for her mental health. Father was also not attending therapy, NA/AA meetings, or support groups.

[16] The juvenile court found that Parents were not addressing their addiction or mental health needs and that Parents are co-dependent and unable to succeed without professional help. The juvenile court agreed with the service providers that Parents were provided numerous services and multiple attempts at reunification and there was nothing more that could have been provided.

[17] Parents do not challenge any of the juvenile court's findings, all of which are supported by the record. Instead, they argue that the juvenile court should not have considered their substance abuse issues as that was not a reason for the Children's removal from their home. Contrary to Parents' argument, however, the record clearly indicates that the Children were removed from Parents' home due to concerns about both the conditions of the home and substance abuse by Parents. Further, while Parents argue that they have made progress, they have yet to progress to the point where service providers were confident that they

could adequately care for the Children. Given the significant evidence outlining Parents' continued struggles with maintaining adequate housing and substance abuse issues, we conclude that the evidence is sufficient to prove that they are unlikely to remedy the conditions that led to the Children's removal from their home. Parents' claim to the contrary amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## II. Indiana Code Section 31-35-2-4(B)(2)(C)

[18] We are mindful that in considering whether termination of parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.* "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007). Furthermore, this court has previously determined that the testimony of the case worker, guardian ad litem ("GAL"), or a CASA regarding a child's need for permanency supports a finding that termination is in the child's best interests. *Id.* at 374; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[19]    With respect to the best interests of the Children, the juvenile court found as follows:

> The Court finds that DCS has shown by clear and convincing evidence that termination of parental rights is in the best interest of [the Children].  Mother and Father love their children; however, this matter is about the best interest of the Child[ren], not the parents.  The Child[ren] have been out of the home for nearly 30 months, which is an extremely long time in the perspective of the Child[ren].  When the children were removed, they were disrespectful, had boundary problems, and were rude and violent to each other during visits.…  The children were argumentative and would not follow directions in the foster home when they had visitation with Mother and Father. Visitation was not consistent due to Mother and Father's inability to maintain sobriety.  The back and forth with visitation was hard on the children.…
>
> The children have lived a life in limbo.  The children need stability and structure.  They do not need any more uncertainty. Mother and Father are unable to provide a home environment that the Child[ren] require[] to thrive.  [A service provided testified that she] believes the children started thriving in the last 6 months, which correlates with no visitations with Mother and Father.  The children love Mother and Father, but they cannot wait indefinitely for their parents to work toward reunification. DCS, CASA and this Court believe that termination of parental rights is in the best interest of [the Children].

Appellants' App. Vol. II pp. 96–97.[1]

---

[1] We quote the findings issued in the juvenile court's order relating to D.B.  The trial court's findings relating to the likelihood that the conditions would not be remedied are essentially the same for each of the Children.

[20]     The juvenile court's findings are supported by the record.  FCM Crippen testified that she believed that termination of Parents' parental rights was in the best interests of the Children.  In addition, Reverend Anthony Spanley, the Children's CASA, also testified that he believed that termination of Parents' parental rights was in the best interests of the Children, adding that he had "seen no stability in the parents … as far as being able to stay off drugs and maintain housing."  Tr. p. 222.  The testimony of FCM Crippen and Rev. Spanley is sufficient to sustain the juvenile court's findings regarding the best interests of the Children.

[21]     The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Riley, J., concur.